# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 24, 2015 Session

## HEATHER RUSSELL WILDER v. JOSEPH CHAMBLEE WILDER

**Appeal from the Fourth Circuit Court for Knox County**
**No. 108931     John D. McAfee, Judge[1]**

---

### No. E2014-02227-COA-R3-CV-FILED-SEPTEMBER 4, 2015

---

This appeal involves post-divorce child support matters. Heather Russell Wilder ("Mother") filed a petition in the Fourth Circuit Court for Knox County ("the Trial Court") for modification of child support against Joseph Chamblee Wilder ("Father"). Mother later alleged that Father had fraudulently misstated his true income, and that he owed more in support towards the parties' three children ("the Children") than had been ordered. The Trial Court adopted the Magistrate's findings and recommendations and held that Mother could not obtain Rule 60 relief on her fraud claim as time had expired. Mother appeals to this Court raising a number of issues. We affirm the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and JOHN W. MCCLARTY, J., joined.

Heather Russell Wilder, pro se appellant.

C. Scott Taylor and Margo J. Maxwell, Knoxville, Tennessee, for the appellee, Joseph Chamblee Wilder.

---

[1] Sitting by Designation.

# OPINION

## Background

Mother and Father, divorced since 2010, have been embroiled in a long-running post-divorce legal controversy. Mother asserts that the Children have special needs of a learning or cognitive nature and that she needs additional financial assistance to support them. Mother has full custody of the Children. Mother also contends that Father has fraudulently understated his actual income, a charge Father denies.

This represents the second appeal in this matter. In *Wilder v. Wilder*, No. E2011-00829-COA-R3-CV, 2012 WL 112579 (Tenn. Ct. App. Jan. 12, 2012), *no appl. perm. appeal filed* ("*Wilder I*"), Mother appealed the Trial Court's order confirming the Referee's findings and recommendations from a hearing in which the Referee set child support from Father at $1,014 per month, found that Father had overpaid his child support obligation by $10,569.06, that Father owed Mother medical expenses in the amount of $5,639.68, and that Father's overpayment would be offset by the medical expenses obligation. In *Wilder I*, this Court affirmed the Trial Court, holding, among other things, that Mother never was prevented from presenting her arguments regarding child support.

The present appeal stems from a December 2010 petition for modification of child support filed by Mother. Mother argued that a previous child support order should be modified to allow an upward deviation for extraordinary expenses and reimbursement for medical expenses. In January 2011, the Magistrate entered findings and recommendations, to wit: child support remained at $1,014 per month; Father had a credit toward his support obligation of $4,929.38; and, credited Mother from Father's overpayment as reimbursement for medical expenses. The order was declared final. The Trial Court adopted and confirmed the findings and recommendations in March 2011. In February 2011, Father filed a motion to dismiss petition for modification. A hearing was held in April 2012. The Magistrate's findings and recommendations were entered, wherein Father's child support was set at $1,419 per month. The Magistrate also divided uncovered medical and related expenses for the children equally between the parties.

In October 2012, Mother filed her first amended petition for modification. At this stage, Mother first alleged fraudulent conduct and perjury by Father and his counsel as to Father's income. Father filed a response in opposition. In April 2014, hearings were conducted before the Magistrate on the child support issue. In July 2014, the Magistrate's findings and recommendations were entered. Father's child support was set at $1,624 per month retroactive to January 2011. Father had an arrearage of $12,764.28 for a monthly payment of $1,900. The parties were to split medical expenses

evenly, and Mother received partial attorney's fees of $1,200. In July 2014, Mother filed her exception to the Magistrate's findings and recommendations. In part, Mother argued for an upward deviation in child support and a prorated obligation of uncovered medical expenses. In August 2014, a hearing was held before the Trial Court. The Trial Court ordered Mother to file a more definite statement on the fraud issue. In August 2014, the Trial Court entered an order adopting the Magistrate's findings and recommendations, stating as follows:

> This matter came on for further hearing before the Honorable John D. McAfee, sitting by designation for the Honorable Bill Swann, Judge of the Circuit Court for Knox County, Tennessee, Division IV, on the 5th day of August, 2014.
>
> The Court addressed pending issues on that date as follows:
>
> 1. Fraud allegations of original plaintiff memorialized in prior pleadings which have not heretofore been addressed or considered by the Court: and
>
> 2. Exceptions to Findings & Recommendations filed by plaintiff as it relates to the Findings & Recommendations of Child Support Magistrate Brenda Lindsay McDaniel entered July 29, 2014, *nunc pro tunc* to April 3, 2014.
>
> The Court in dialogue with counsel and based on discussions, schedules, etc. directed the following as to the fraud issue:
>
> A. Plaintiff shall file a more definite statement on or before September 5, 2014, setting forth with specificity those facts and circumstances which are alleged to be fraudulent to which relief is requested.
>
> B. Defendant shall file responsive pleading and/or dispositive Motion on or before September 20, 2014.
>
> C. Anticipating that a dispositive Motion addressing some or all of the fraud allegations being filed, the same will be heard in Maynardville Monday, September 29, 2014, at 9:00 a.m. at which time the Court will enter a ruling and to the extent that is not resolved by dispositive Motion, those matters will be then be set for trial.
>
> As to the Exceptions filed by plaintiff to the Findings & Recommendations, the Court concludes that such Exceptions are without merit and, it is, accordingly
>
> ORDERED that the Findings & Recommendations entered July 29, 2014, *nunc pro tunc* to April 3, 2014, are hereby adopted and the recommendations specified are herein confirmed as the Order of the Court in this cause. The cost of this proceeding are hereby reserved pending further and final hearing.

Mother filed her more definite fraud allegations statement in September 2014. The Trial Court subsequently conducted another hearing focused on the issue of Mother's petition for modification and the fraud allegations. The Trial Court denied Mother's attempt to seek Rule 60 relief on the basis of fraud as untimely. In October 2014, the Trial Court entered its findings of fact and conclusions of law, from which we quote:

This cause came to be heard on the 29th day of September, 2014, before the Honorable John McAfee, Circuit Judge sitting by designation for the Fourth Circuit Court of Knox County, Tennessee, upon Plaintiff's More Definite Fraud Allegations' Statement, Defendant's Response to Plaintiff's More Definite Fraud Allegations' Statement and Motion to Dismiss, argument of counsel, and the record as a whole. From all of the above, the Court finds as follows:

1. The Court finds that there were various pleadings, Findings & Recommendations, and Orders entered between the date of the Complaint hearing and hearing held December 7, 2010. The Court concludes and finds that such Findings & Recommendations and/or Orders confirming Findings & Recommendations prior to December, 2010, were not "final Orders". The Court finds that Findings & Recommendations were prepared pursuant to hearing held December 7, 2010, and were subsequently entered by the Court on January 13, 2011, and confirmed by Order of the Knox County Fourth Circuit Court on March 17, 2011. The Court finds and deems the Order filed March 17, 2011, to be the final Order as it relates to child support issues on or prior to the hearing date of December 7, 2010.

The Court notes that thereafter Petition for Modification was filed by original Plaintiff on December 21, 2010, and thereafter First Amended Petition for Modification was filed on October 5, 2012.

2. The Court holds that the Petition for Modification filed December 21, 2010, is insufficient to raise claim under Rule 60 of the Tennessee Rules of Civil Procedure. Further, the Court finds that the First Amended Petition for Modification filed October 5, 2012, which specifically includes allegations of fraudulent conduct shall not be allowed as to any Rule 60 claim insofar as such filing had not occurred within one year of the final Order which was entered March 21, 2011.

3. Insofar as the Court finds that there was no timely Petition filed pursuant to Rule 60 of the Tennessee Rules of Civil Procedure, the Court thereby denies any and all claims of relief sought by the Plaintiff as it relates to those pleadings that have not otherwise been addressed and resolved by other Orders of the Court.

4. The Court notes that the defense of collateral estoppel has been raised by the Defendant and at this time expresses no opinion regarding that argument as it is unnecessary in reaching its present decision.

5. Court costs are taxed equally to the parties for which execution may issue . . . .

Mother filed a timely appeal to this Court.

## Discussion

Mother raises a host of issues on appeal. We restate and consolidate Mother's issues into the following dispositive issues: 1) whether the Trial Court erred in denying Mother's petitions to modify; 2) whether the Trial Court erred in adopting the Magistrate's findings and recommendations related to the August 2014 order; and, 3) whether the Trial Court erred in taxing court costs equally against the parties.

Initially, we note that Mother is representing herself pro se on appeal. As this Court explained in *Young v. Barrow*:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995).

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003).

In her amended petition for modification of child support. Mother alleged fraud on the part of Father and cited to and relied on rule 60.02. Our standard of review as to a trial court's disposition of a Tenn. R. Civ. P. 60.02 motion for relief from a judgment is set forth in *Henry v. Goins*, where our Supreme Court stated as follows:

In reviewing a trial court's decision to grant or deny relief pursuant to Rule 60.02, we give great deference to the trial court. *See Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993). Consequently, we will not set aside the trial court's ruling unless the trial court has abused its discretion. *See id.* An abuse of discretion is found only when a trial court has "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" *State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002) (*quoting State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)). The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court. *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

*Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003).

Mother's other issues on appeal primarily center on child support matters. As this Court explained in *Richardson v. Spanos*:

Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

\*\*\*

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104

S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

We first address whether the Trial Court erred in denying Wife's petitions to modify. Rule 60.02 of the Tennessee Rules of Civil Procedure provides:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of error coram nobis, bills of review and bills in the nature of a bill of review

are abolished, and the procedure for obtaining relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Tenn. R. Civ. P. 60.02.

In *Black v. Black*, 166 S.W.3d 699 (Tenn. 2005), the Tennessee Supreme Court discussed allegations of fraud in the context of relief under Rule 60.02. In *Black*, a wife sued her husband two years after their divorce was finalized, claiming, among other things, that she had been coerced by her then husband into signing the marital dissolution agreement and that her husband had fraudulently understated his worth. *Id.* at 701-02. Husband filed a motion to dismiss for failure to state a claim, which the trial court granted. *Id.* at 702. Wife appealed. The Court of Appeals held that the wife's complaint was actually an independent action for relief as allowed under the savings provision of Rule 60.02 of the Tennessee Rules of Civil Procedure, but that wife had failed to articulate facts of extrinsic fraud as required. *Id.* The Tennessee Supreme Court affirmed the Court of Appeals, stating in relevant part:

> A motion filed under Rule 60.02 "shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken." Tenn. R. Civ. P. 60.02; *see also Killion*, 845 S.W.2d at 213-14.

> Because the Wife filed her complaint in the chancery court, rather than filing a motion in the circuit court within one year of the entry of the final divorce decree, the complaint cannot be considered as a motion for relief from the divorce decree under sections (1) though (5) of Rule 60.02.

> Rule 60.02, however, also contains a "savings" provision, which clarifies that the rule "does not limit the power of a court to entertain *an independent action* to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court." *See* Tenn. R. Civ. P. 60.02 (emphasis added). Although there is no time limit for filing an independent action to set aside a judgment, it may be granted "only under unusual and exceptional circumstances" and "where no other remedy is available or adequate." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 229-30 (Tenn. Ct. App. 2000) (citing *Jerkins v. McKinney*, 533 S.W.2d 275, 281 (Tenn. 1976)).

> Although a motion to set aside a judgment for fraud under section 2 of Rule 60.02 may be based on intrinsic or extrinsic fraud, an independent action to set aside a judgment under the savings provision of Rule 60.02

requires extrinsic fraud. *Whitaker*, 32 S.W.3d at 230; *see also New York Life Ins. Co. v. Nashville Trust Co.*, 200 Tenn. 513, 292 S.W.2d 749, 751-53 (1956) (independent action to set aside judgment requires extrinsic fraud). Intrinsic fraud occurs "within the subject matter of the litigation," and it includes such things as falsified evidence, forged documents, or perjured testimony. *Whitaker*, 32 S.W.3d at 230. Extrinsic fraud, on the other hand, "involves deception as to matters not at issue in the case which prevented the defrauded party from receiving a fair hearing." *Nobes v. Earhart*, 769 S.W.2d 868, 874 (Tenn. Ct. App. 1988). Examples of extrinsic fraud have included keeping a party from filing a lawsuit by falsely promising a compromise, keeping a party from knowing about a lawsuit, and an attorney's claiming to represent a party while acting in a manner opposed to the party. *See id.*

Although the Wife's complaint was entitled "Complaint for Damages for Fraud, Deceit, and Coercion" and sought relief in the form of compensatory and punitive damages, the Court of Appeals concluded that the substance of the complaint was an independent action under Rule 60.02 to set aside the final divorce decree entered on December 12, 2000. We agree.

The complaint alleges that the Husband acted fraudulently by withholding the identity and value of his property and securities before the MDA was executed on September 13, 2000. The allegations conflicted with the language of the MDA, which stated in part that the MDA was "fair and reasonable" and "not the result of any fraud, duress, or any undue influence exercised by either party herein upon the other, or by any other person or persons upon either of the parties." The allegations also conflicted with the language of the amended MDA, which was executed on November 29, 2000, and which ratified and affirmed the provisions of the initial MDA. There is no dispute that both the MDA and the amended MDA were incorporated into the final divorce decree, which was entered by the circuit court on December 12, 2000. In sum, the complaint, even when viewed in a light most favorable to the Wife, was an independent action alleging fraud and seeking relief from the final divorce decree entered on December 12, 2000, in the Shelby County Circuit Court.

As a result, we further agree with the Court of Appeals' conclusion that the Wife's complaint did not allege sufficient facts to establish extrinsic fraud as required by the savings provision of Rule 60.02. As discussed above, the complaint alleged that the Husband "fraudulently

concealed his true net worth" by withholding the identity and value of his property, securities, law practice, equipment and furnishings. Although these assertions concerned the subject matter of the litigation and may have been sufficient to establish intrinsic fraud had they been pursued within one year of the divorce decree under section 2 of Rule 60.02, there were no assertions of fraud indicative of "deception as to matters *not at issue in the case* " that "prevented the [appellant] from receiving a fair hearing." *See Nobes*, 769 S.W.2d at 874 (emphasis added).

*Black*, 166 S.W.3d at 703-04 (footnote omitted).

Mother's Rule 60.02 petition was filed as part of her divorce lawsuit in October 2012, more than one year after the March 2011 order. Mother's petition alleged fraud, section two under Rule 60.02. Under a plain reading of Rule 60.02, Mother's petition is time-barred whether the alleged fraud is intrinsic or extrinsic. Had Mother filed an independent action as allowed under the savings provision of Rule 60.02 alleging fraud, Mother would have had to allege extrinsic rather than intrinsic fraud in order to succeed because "an independent action to set aside a judgment under the savings provision of Rule 60.02 requires extrinsic fraud." *Black*, 166 S.W.3d at 703. As explained in *Black*, examples of intrinsic fraud include falsified evidence, forged documents, or perjury. In other words, intrinsic fraud relates to matters within the subject matter of the controversy. On the other hand, extrinsic fraud—as the name suggests— relates to matters outside the subject matter of the controversy, such as keeping a party from knowledge about a lawsuit.

In the present case, Mother's fraud allegations are that Father and his attorney fraudulently misled Mother as to his actual income. This type of alleged fraud, going to the subject matter of the controversy, falls into the category of intrinsic fraud. Therefore, even if Mother had brought an independent action as allowed under the savings provision of Rule 60.02, her petition still would have been correctly denied. We affirm the Trial Court as to this issue.[2]

We next address whether the Trial Court erred in adopting the Magistrate's findings and recommendations related to the August 2014 order. Among other things, Mother requests the following: that the Court allocate medical expenses between the parties pro rata, rather than equally; that the Court award Mother an upward deviation for extraordinary medical and educational expenses; and, that the Court award Mother her attorney's fees.

---

[2] Mother also raises the issue of collateral estoppel on appeal. The Trial Court, however, expressly stated it did not rely on this theory in its order, and we need not address it.

While constrained by the Child Support Guidelines, trial courts do retain some discretion in making child support decisions. For example, Mother takes issue with the Trial Court's affirming a 50/50 split in medical expenses rather than ordering a pro rata distribution. We, however, previously have addressed a similar matter:

> Again, Mother seems to take the position that, under the Guidelines, all uninsured medical expenses must be allocated between parents based upon their respective incomes and that the trial court must explain any "deviation" from the Guidelines. We reject this reasoning.
>
> ***
>
> It is clear to us that the Guidelines authorize the trial court to do exactly what it did. The precise language of the Guidelines on this subject provides that uninsured medical expenses "shall be paid by the parents as incurred according to each parent's percentage of income *unless some other division is specifically ordered by the tribunal.*" Tenn. Comp. R. & Regs. R. 1240-2-4-.04(8)(d)(3). Here, the court chose to allocate such expenses equally between Mother and Father. In line with the reasoning in *Blankenship*, as discussed above, we conclude that the trial court's allocation of the Child's "[u]ncovered reasonable and necessary health, dental, orthodontic, vision and other medical expenses ..." was well within the language quoted directly above. The trial court did not deviate from the Guidelines; it followed them. There is no error in the trial court's action.

*Taylor v. Taylor*, No. E2013-01734-COA-R3-CV, 2014 WL 3763727, at *13 (Tenn. Ct. App. July 30, 2014), *no appl. perm. appeal filed*.

Contrary to Mother's argument on appeal, the Trial Court was not *required* to assign a pro rata distribution of medical expenses. On this and Mother's other issues, the Trial Court rendered a discretionary decision, based on the evidence and argument available to it. Mother fails to articulate why the Trial Court's decisions constituted an abuse of discretion or otherwise disregarded applicable law. Additionally, we note that Mother has had an exhaustive series of proceedings in this matter in which to press her claims. To the extent Mother's issues were addressed in *Wilder I*, we will not revisit them. Mother presented her case to the Trial Court. Mother, who is unemployed and has been pursuing a college education for some time, asserted that the Children have special needs which require extensive educational and medical expenses. The transcripts reveal that the Trial Court heard Mother's arguments, considered them, but adopted a contrary ultimate decision. Again, Mother fails to explain how the Trial Court abused its

discretion in doing so.  A discretionary decision by its very nature is one of multiple rational options.  The Trial Court neither contravened the law or logic in declining Mother's requested litany of additional relief.  We discern no reversible error in the Trial Court's August 2014 order.

The final issue we address is whether the Trial Court erred in taxing court costs equally against the parties.  We find no error in the Trial Court's allocation of costs between the parties.  We affirm the Trial Court's August and October 2014 orders.  In sum, we affirm the judgment of the Trial Court in its entirety.

### **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below.  The costs on appeal are assessed against the Appellant, Heather Russell Wilder, and her surety, if any.

_____
D. MICHAEL SWINEY, JUDGE