# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
October 14, 2010 Session

## DOUGLAS EDWARD CORDER
v.
## VALERIE JEAN CORDER

**Appeal from the Circuit Court for Shelby County**
**No. 154501-6 R.D.     Jerry Stokes, Judge**

**No. W2009-02653-COA-R3-CV - Filed February 28, 2011**

This appeal involves post-divorce modification of child support. After a prior appeal, the case was remanded to the trial court to determine whether the father was entitled to a reduction in his child support obligation when one of the parties' children reached majority. On remand, the trial court declined to reduce the father's child support. The father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Stay of Garnishment Pending Appeal Lifted**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

William Bryan Penn, Penn & Associates, PC, Memphis, Tennessee, for Respondent/Appellant, Douglas Edward Corder.

Julie C. Bartholomew, Somerville, Tennessee, for Petitioner/Appellee, Valerie Jean Corder.[1]

---

[1] Mother was represented by different counsel in the trial court below.

# MEMORANDUM OPINION[2]

## FACTS AND PROCEEDINGS BELOW

This is a post-divorce appeal involving the child support for two children who reached the age of majority in 2001 and 2003. Respondent/Appellant Douglas Edward Corder ("Father") and Petitioner/Appellee Valerie Jean Corder ("Mother") were divorced in 1998. Mother was designated as the primary residential parent for their daughter, born in 1982, and their son, born in 1984. The parties' obligations and responsibilities have been the subject of extensive post-divorce litigation, which we need not recount here. For the underlying facts, we rely on our prior Opinion in *Corder v. Corder*, 231 S.W.3d 246 (Tenn. Ct. App. Nov. 30, 2006).

The essential background facts are as follows. In May 2000, the trial court (Judge John McCarroll) entered an order setting Father's child support obligation for the two minor children at $1558 per month.[3] This amount was based on Father's income level, with an upward deviation for Father's failure to exercise overnight visitation with the children. In April 2001, Father filed a petition to reduce his child support, based on his alleged income at that time and his alleged exercise of overnight visitation with the children. In October 2000, the parties' daughter turned eighteen years old, and she graduated from high school in approximately May 2001. After that, without benefit of court order, Father reduced his child support payments to $1025.00 per month. The parties' son reached age eighteen in December 2002 and graduated from high school in approximately May 2003. Father filed another petition to modify his child support obligation in July 2004, seeking to discontinue his child support payments altogether.[4]

---

[2]Rule 10. Memorandum Opinion

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse, or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

TENN. R. APP. P. 10

[3]This order adopted the ruling of the Divorce Referee, who at that time was the Honorable Jerry Stokes.

[4]Father asserted in his petition that, after the parties' youngest child was emancipated, he continued paying the reduced amount of child support to Mother to apply toward arrearages previously assessed against him for the children's medical expenses, attorney fees, and court costs.

In the June 2005 order that was the subject of the first appeal, Chancellor George Ellis[5] issued an order setting forth Father's arrearages, holding him in contempt of court, and dismissing all other matters not specifically addressed. Father appealed this order.

On appeal, Father argued, *inter alia*, that the trial court erred in calculating his child support arrearage and by declining to reduce his child support obligation after the parties' oldest child reached majority. **Corder**, 231 S.W.3d at 359. We noted that the operative child support order in this case required Father to pay a lump sum of $1558 per month for both children, and did not identify the amount of support to which each child was entitled. **Id.** at 359-60. In light of this, we held:

> It is unclear on this record whether the child support guidelines then in effect, based on Father's income at the time, would have required Father to pay $1,558 per month in child support for the remaining minor child, or whether Father's prorated payments of $1,025 were proper. These issues were not addressed by the trial court because it held that Father was not permitted to unilaterally reduce his child support award. Therefore, we must vacate the holding that Father had a child support arrearage of $7,657.69 and remand for the trial court to determine whether the circumstances justify holding Father responsible for the entire $1,558 per month for the younger child after June 2001, in light of the child support guidelines.

**Id.** at 360. In light of this holding, we also vacated the trial court's award to Mother of attorney fees, to be reconsidered in light of the trial court's ruling on remand on Father's child support. **Id.**

On that basis, the cause was remanded to Chancellor Ellis. On April 7, 2009,[6] Chancellor Ellis conducted a hearing to consider the issues on remand. At the hearing, the trial judge carefully considered the arguments of counsel, but did not take any additional evidence. The trial court limited the hearing to the issues remanded, namely (1) Father's child support arrearage and the related contempt for failure to pay child support, and (2) the award to Mother of attorney fees. **Corder**, 231 S.W.3d at 360. The trial judge issued an oral ruling at the conclusion of the hearing, which was memorialized in a written order entered on May 4, 2009. In pertinent part, the order states:

---

[5]Chancellor Ellis was appointed by the Tennessee Supreme Court to hear the case. After the appointment, apparently there was considerable delay in transmitting the matter, through no fault of Chancellor Ellis.

[6]For reasons that are not clear in the record, Chancellor Ellis did not promptly receive the appellate court's decision and its order of remand. This caused additional delay, again through no fault of Chancellor Ellis.

2. That Douglas Edward Corder has been consistently and repeatedly in contempt of the Orders of this Court rendered by three Judges and one Judicial Divorce Referee, and this Court finds that his willful contempt includes but not limited to repeated failure to pay child support, to pay his share of the children's medical and dental expenses, to timely and accurately complete financial aid forms prior to Victoria reaching the age of eighteen and to provide medical insurance documentation for both children.

3. That the previous Order of Court on April 26, 2000 established child support at a lump sum of $1,558.00 per month without identifying the amount to which each child was entitled. This was set by the Divorce Referee and ratified by Order of the Presiding Judge of Shelby County.

4. That Douglas Edward Corder was not entitled to an automatic proration of child support when the parties' daughter, Victoria, became emancipated; nor was Douglas Edward Corder entitled to unilaterally or retroactively modify the Orders of Court in accordance with T.C.A. § 36-5-101(f)(1). The proof established no circumstances that justified Douglas Edward Corder to modify his child support after June 2001. The court finds that the Juvenile Referee found that due to Douglas Edward Corder's conduct an upward deviation was necessitated.

5. That Douglas Edward Corder's failure to pay child support as ordered from June, 2001 through June, 2003, was willful contempt of Court. In accordance with the Mandate from the Court of Appeals, Valerie Jean Tronolone Corder is awarded judgment against Douglas Edward Corder for the arrearage of child support ($7,657.69) and pre-judgment interest from June 5, 2005 ($3,599.26) in accordance with T.C.A. § 36-5-101(f)(1) for a total of Eleven Thousand Two Hundred and Fifty-Six Dollars and Ninety-Five Cents ($11,256.95).

6. That Douglas Edward Corder has shown time after time his absolute disregard for the Orders of Court and the court system by his repeated contemptuous conduct justifying the sanction of attorney fees necessitated to enforce the Orders of Court. In addition, this court, after an exhaustive review of the files, found that Douglas Edward Corder's contemptuous conduct began during the pre-trial matters in 1997 with his lewd and profanely indecent answers to interrogatories that were filed in this matter. In accordance with the Mandate of the Court of Appeals, Petitioner is therefore awarded additional judgment against Douglas Edward Corder in the amount justified by the proof ($17,325.00) and pre-judgment interest from June 5, 2005 ($8,142.75) in accordance with T.C.A. § 35-5-101(f)(1) for a total of Twenty-Five Thousand Four Hundred Sixty-Seven Dollars and Seventy-Five Cents ($25,467.75).

Thus, the trial court declined to reduce Father's child support from the amount established in the April 2000 order and found him in contempt of court for failing to pay the child support arrearage. It reaffirmed the award of attorney fees to Mother. The trial court declined to consider Father's motion on quashing Mother's garnishment of his wages at this hearing.

Father filed a motion to alter or amend the trial court's order on remand. He argued that the trial court had failed to consider the relevant caselaw, and that Father had in fact made the "necessary payments" in the matter. Father also filed a motion to be permitted to make installment payments on the judgment awarded to Mother. Mother opposed this motion. Mother asked that the court order security for the collection of the judgment in the form of a life insurance policy and a voluntary wage assignment.

In June 2009, Father filed a notice of appeal. Both Father and Mother filed motions for attorney fees in connection with the garnishment and Mother's other efforts to collect the arrearages. Father filed a motion for a stay pending appeal, which Mother opposed. This appeal was dismissed in September 2009 on the grounds that the order appealed was not a final judgment.

After the intermediate appellate court's dismissal of Father's appeal, Mother's counsel asked Chancellor Ellis to consider the matters necessary to finalize the May 2009 trial court order and the additional pending matters. Chancellor Ellis declined, apparently on the basis that his appointment by the Tennessee Supreme Court to handle the case had expired. Chancellor Ellis instructed the parties to send any correspondence and motions in the case to the Honorable Jerry Stokes, Circuit Court Judge for Shelby County. Judge Stokes then entered an order setting all motions for hearing on October 19, 2009.

After the October 19, 2009 hearing, Judge Stokes entered an order denying Father's motion to alter or amend Chancellor Ellis's May 2009 order. Judge Stokes granted Father's motion for a stay of the garnishment pending appeal, noting that, "pursuant to Tenn. R. Civ. P. Rule 62.08 the trial court may stay proceedings during the pendency of an appeal to preserve the status quo." Wife's motion for attorney fees was denied. Father now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Father argues that trial court erred in determining the amount of child support that Father owed after the emancipation of the parties' oldest child. Father asserts that the trial court took punitive measures against him based on matters not contained in the appellate record, and that the trial court incorrectly determined the child support arrearages. Father asserts that he has in fact satisfied all judgments and arrearages. He also contends that the

trial court erred in awarding attorney fees to Mother. Father seeks an award of attorney fees for this appeal. Mother argues that the trial court erred in issuing a stay of garnishment pending appeal, and asserts that she is entitled to attorney fees for this appeal.

On appeal, "[w]hen the trial court has set forth its factual findings in the record, we will presume the correctness of these findings so long as the evidence does not preponderate against them." *Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586, at *4 (Tenn. Ct. App. Aug. 23, 2004) (citing TENN. R. APP. P. 13(d); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000); *accord Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Nashville Ford Tractor, Inc.*, 194 S.W.3d at 425.

We review the trial court's decision on whether to award attorney fees under an abuse of discretion standard. *Richardson v. Spanos*, 189 S.W.3d 720. 729 (Tenn. Ct. App. 2005); *Evans*, 2004 WL 1882586 at *17.

## ANALYSIS

### *Child Support*

Father first asserts that the trial court erred on remand in declining to reduce the amount of child support for which Father was responsible after the parties' oldest child reached majority and graduated from high school.[7]

This Court has previously addressed the parameters for determining an obligor parent's responsibility to pay child support:

> Parents have "deeply rooted moral responsibilities" to support their minor children. *Boggs v. Boggs*, 520 U.S. 833, 847, 117 S.Ct. 1754, 1764, 138 L.Ed.2d 45 (1997) (quoting *Rose v. Rose*, 481 U.S. 619, 632, 107 S.Ct. 2029, 2037, 95 L.Ed.2d 599 (1987)); *State Dep't of Human Servs. ex rel. Young v. Young*, 802 S.W.2d 594, 600 (Tenn. 1990); *Baker v. Baker*, 169 Tenn. 589, 592, 89 S.W.2d 763, 764 (1935). In addition to this moral responsibility, Tennessee law imposes a legal obligation on parents to support their minor

---

[7]As part of his argument, Father criticizes the trial court's decision on remand not to hear any additional evidence, but to base its ruling on a review of the file and the argument of counsel. This Court's prior ruling did not direct the trial court to hear further proof, so the decision was committed to the trial court's sound discretion. On appeal, we find no abuse of the trial court's discretion.

children in a manner commensurate with their own means and station in life. Tenn. Code Ann. § 34-1-102(a) (2001); *Wade v. Wade*, 115 S.W.3d 917, 920 (Tenn. Ct. App. 2002). Ever since 1984, the process and criteria for ascertaining a parent's child support obligation has been governed by Child Support Guidelines promulgated by the Tennessee Department of Human Services in accordance with Tenn. Code Ann. § 36-5-101(e) (Supp. 2004).

Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

Under current law, the amount of support derived from a proper application of the formula in the Child Support Guidelines becomes the presumptive amount of child support owed. This amount of support is rebuttable. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.01(1)(d)(1) (Mar. 2005); *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). Accordingly, trial courts may, in their discretion, deviate from the amount of support required by the Child Support Guidelines, *State v. Wilson*, 132 S.W.3d 340, 343 (Tenn. 2004); *Jones v. Jones*, 930 S.W.2d at 545, but when they do, they must make specific written findings regarding how the application of the Child Support Guidelines would be unjust or inappropriate in the case. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(b) (Mar.2005).

*Richardson*, 189 S.W.3d at 725; TENN. COMP. R. & REGS. 1240-2-4-.01(4) (2006) ("These Guidelines are a minimum base for determining child support obligations. The presumptive child support order may be increased according to the best interest of the child for whom support is being considered, the circumstances of the parties, and the rules of this chapter."). *See also* Tenn. Code Ann. § 36-5-101(c)(1)(A) (2005);[8] TENN. COMP. R. & REGS. 1240-2-4-

---

[8]This statute provides:

In making the court's determination concerning the amount of support of any minor child or children

(continued...)

.076(2), -.07(1)(b) (2008).[9] Thus, under Tennessee statutes and the child support guidelines, courts are required to set child support in accordance with the guidelines unless there are written findings stating the amount of support that would have been ordered under the guidelines and the reason for the court's deviation from the guidelines.

These principles apply in considering a petition to modify child support as well as an initial child support proceeding. *See Kopp v. Kopp*, No. M2008-01146-COA-R3-CV, 2009 WL 2951172, at *2 (Tenn. Ct. App. Sept. 14, 2009). In considering a petition to modify child support, the trial court must determine whether there is a "significant variance" between the obligor parent's current support and the support pursuant to the child support guidelines. *Id.* (citing T.C.A. § 36-5-101(g); *Kaplan v. Bugalla*, 188 S.W.3d 632, 636 (Tenn. 2006)).

Therefore, in this case, in considering the modification of Father's child support, the trial court was required to make its decision within the strictures of the guidelines. In the record, there is no evidence of a change in Father's income from 2001, when the order was entered setting Father's child support for both children at $1558 per month.[10] *See* TENN. COMP. R. & REGS. 1240-2-4-.05(2)(b)(1) (2008) (stating that a change in the obligor parent's gross

_____

[8](...continued)
> of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines, as provided in this subsection (e). If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child or children, or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

T.C.A. § 36-5-101(e)(1)(A) (2005).

[9] The current child support guidelines state:

> The tribunal may order as a deviation an amount of support different from the amount of the presumptive child support order. . . . The amount or method of such deviation is within the discretion of the tribunal provided, however, the tribunal must state in its order the basis for the deviation and the amount he child support order would have been without the deviation. In deviating from the Guidelines, primary consideration must be given to the best interest of the child for whom support under these Guidelines is being determined.

 TENN. COMP. R. & REGS 1240-2-4-.07(1)(b) (2008).

[10]We recognize that Father has asserted that his income is less than the income level utilized in the 2001 order, and that he had increased visitation with the children during the pertinent time period; however, the trial court did not permit him to submit evidence of these assertions in the 2009 hearing on remand, and we find no abuse of discretion in the trial court's decision not to permit further evidence.

income of at least 15% may be a "significant variance"). However, it is undisputed that, in approximately May 2001, the parties' oldest child, already eighteen years old, graduated from high school. As noted in our prior opinion in this case, at that point, Father was no longer legally obligated to provide financial support for the oldest child. *Corder*, 231 S.W.3d at 357. The child support guidelines state that one circumstance that constitutes a "significant variance" is "[a] change in the number of children for whom the [obligor parent] is legally responsible and actually supporting." TENN. COMP. R. & REGS. 1240-2-4-.05(2)(b)(1) (2008). Consequently, under the guidelines, once the parties' oldest child was emancipated, all other things being equal, Father was entitled to a reduction in his child support. The trial court in this case declined to modify Father's child support. We find that, under the circumstances, this amounts to a deviation from the presumptive amount of child support due under the guidelines. Therefore, we examine the reasons given by the trial court for its decision to deviate from the guidelines. *See Kaplan v. Bugalla*, 188 S.W.3d 632, 637-38 (Tenn. 2006) (discussion of factors justifying upward deviation in child support). The trial court noted the upward deviation from the guidelines ordered in 2001, based on Father's lack of overnight residential parenting time with the children. It also found that Father had repeatedly failed to comply with the court's orders, including "but not limited to" Father's "repeated failure to pay child support, to pay his share of the children's medical and dental expenses, to timely and accurately complete financial aid forms prior to [the oldest daughter] reaching the age of eighteen and to provide medical insurance documentation for both children."

The arrearage in paying the children's medical bills was the subject of a separate monetary award, and thus could not be relied upon to justify a further upward deviation. *See Corder*, 231 S.W.3d at 350; *Atkins v. Motycka*, No. M2007-02260-COA-R3-CV, 2008 WL 4831314, at *7 (Tenn. Ct. App. Nov. 6, 2008). The failure to complete the financial aid forms for the oldest child prior to her emancipation is also not a reason to justify an upward deviation, because the support at issue in this appeal was only for the youngest child, after the emancipation of the oldest child. *See* TENN. COMP. R. & REGS. 1240-2-4-.07(1)(b) (2008) (stating that the reasons for deviation from the presumptive guideline amount of support must relate to the "best interest of the child for whom support . . . is being determined"). *See also* TENN. COMP. R. & REGS. 1240-2-4-.05(1)(c)(3)(ii) (2008).

The reasons in the record, then, justifying the trial court's upward deviation from the presumptive amount of support under the guidelines for one child are Father's failure to provide Mother with documentation of medical insurance for the youngest child, and Father's continued failure to exercise overnight residential parenting time with the youngest child. We find that these are legally sufficient reasons for the trial court's deviation from the guideline amount of support. "The amount . . . of such deviation is within the discretion of"

the trial court. TENN. COMP. R. & REGS. 1240-2-4-.07(1)(b) (2008).[11] Under all of the circumstances of this case, we find that the amount of deviation ordered by the trial court, while high, is not "clearly unreasonable" and thus is not an abuse of the trial court's discretion. ***Richardson***, 189 S.W.3d at 725.

We have carefully considered Father's other arguments on appeal related to the trial court's decision on his child support obligation, and respectfully conclude that they are without merit. Accordingly, we affirm the trial court's decision on Father's child support arrearage.

### *Attorney Fee Award*

Father additionally argues that the trial court erred in reaffirming its award to Mother of $17,325.00 in attorney fees plus prejudgment interest. He contends that the trial court based its award of attorney fees on "lewd and profanely indecent answers to interrogatories" that are not in the appellate record.

On appeal, the trial court's decision on whether to award attorney fees is reviewed under an abuse of discretion standard. ***Richardson***, 189 S.W.3d at 729 (citing ***Aaron v. Aaron***, 909 S.W.2d 408, 411 (Tenn. 1995)). Reversal of the trial court's decision to deny Mother attorney fees at the trial level should occur "only when the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." ***Id.*** (citing ***Perry v. Perry***, 114 S.W.3d 465, 467 (Tenn. 2003); ***Clinard v. Blackwood***, 46 S.W.3d 177, 182 (Tenn. 2001)).

Regardless of whether the particular interrogatory answers referenced by Chancellor Ellis were included in the appellate record, his May 2009 order and his comments at the April 2009 hearing make it clear that he recalled the parties' course of conduct in the litigation, had reviewed the entire case file in preparation for the hearing, and based his decision on his "exhaustive review of the files." Based on this Court's review of the appellate record, we find no abuse of discretion in the trial court's award of attorney fees to Mother.

---

[11]We recognize that the amount of the deviation is calculated based on the trial court's written finding on "the amount the child support order would have been without the deviation," TENN. COMP. R. & REGS. 1240-2-4-.07(1)(b) (2008), and that the trial court's May 2009 order did not contain this finding. We base our assessment of the amount of the deviation on the amount of child support Father actually paid during this time period, $1025 per month, based on his calculation of the guideline amount at the time. We cannot, in the interest of justice and judicial economy, justify remanding this case, given its long and tortured history, simply for the trial court to make a written finding on the guideline amount of support, absent any upward deviation.

### *Stay of Garnishment*

On cross-appeal, Mother argues that Father's financial obligations remain unsatisfied, and that Judge Stokes erred in issuing a stay of garnishment pending appeal.[12] Father asserts on appeal that he owes no arrearage, and so no additional monies should be garnished.

On November 12, 2009, Judge Stokes issues an order stating: "Pursuant to Tenn. R. Civ. P. Rule 62.08 the trial court may stay proceedings during the pendency of an appeal to preserve the status quo."

From our careful review of the record, we cannot conclude that Judge Stokes erred in granting Father's motion to stay the garnishment proceedings. However, in view of our holding above on Father's child support obligation, the stay of garnishment pending appeal is no longer appropriate, and is therefore lifted.

### *Attorney Fees on Appeal*

Both Father and Mother request an award of attorney fees for this appeal. An award of appellate attorney fees is within the sound discretion of the appellate court. ***Archer v. Archer***, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). Exercising our discretion, we decline to award attorney fees on appeal to either party.

### CONCLUSION

The decision of the trial court is affirmed, and the trial court's stay of garnishment pending appeal is lifted. Costs on appeal shall be taxed equally to the Appellant Douglas Edward Corder, and his surety, and to Appellee Valerie Jean Corder, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[12]Mother argues that the trial court erred in issuing a stay of the garnishment because the prior ruling in this matter, regarding how much Father owes, constitutes the law of the case. This argument is without merit.